```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/30/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

OMAR WASHINGTON,

                              Plaintiff,

-against-

DANIEL MARTUSCELLO JR., et al.,

                              Defendants.

24 CV 3607 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Omar Washington ("Plaintiff"), who is currently incarcerated at Sing Sing Correctional Facility, commenced this *pro se* action on May 6, 2024, pursuant to 42 U.S.C. § 1983 ("§ 1983" or "Section 1983"). Plaintiff asserts claims against Daniel Martuscello III, Acting Commissioner of the New York State Department of Corrections and Community Supervision ("DOCCS") ("Defendant Martuscello"), in his official capacity; Officer Washington, a correctional officer at Sing Sing Correctional Facility, in her individual capacity ("Defendant Washington"); and Sergeant Riley, a correctional officer at Sing Sing Correctional Facility, also in his individual capacity ("Defendant Riley"), alleging violations of his rights under the First and Fourteenth Amendments of the U.S. Constitution as well as under the Religion Land Use Institutionalized Persons Act ("RLUIPA").[1] (*See generally* Complaint ("Compl."), ECF No. 1.)

---

[1] The Court notes that pro se Plaintiff alleged a violation of his rights under the Fifth Amendment in his Complaint. (*See* Compl. at 7.) Plaintiff similarly references the Eighth Amendment and the Religious Freedom Restoration Act (RFRA) in his Complaint. (*Id.* at 4.) The Fifth Amendment guarantees the constitutional rights of accused persons with respect to criminal procedure, and the Eighth Amendment protects individuals from excessive bail, fines, and cruel and unusual punishment. The Religious Restoration Act protects religious freedoms by requiring strict scrutiny for laws that substantially burden religious exercise. Neither the Fifth Amendment, Eighth Amendment, or RFRA is applicable in this action because Plaintiff does not offer any factual allegations to support possible violations of these laws and because Plaintiff is not challenging the legality of any law substantially burdening his religious exercise. Consequently, the Court assumes the references to these laws was in error, such as when pro se Plaintiff mentions the "Eight Amendment Equal Protection Clause," and does not address these. (*Id.* at 5.)

1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants have moved to dismiss the Complaint. Defendants filed their Memorandum of Law ("Def. Mot.", ECF No. 30) and Reply ("Def. Reply", ECF No. 32) in support of their motion to dismiss. Plaintiff filed an opposition. ("Pl. Opp", ECF No. 31.) For the following reasons, Defendants' motion to dismiss is GRANTED.

## BACKGROUND

### I. Factual Allegations

The following relevant facts are derived from the Complaint and the documents appended thereto and are assumed to be true for the purposes of resolving this motion.[2]

Plaintiff is an inmate at Sing Sing Correctional Facility in Ossining, New York. Plaintiff is a member of the Nation of Islam and claims to actively participate in a religious service known as Jumah. (Compl. ¶ 18.) Plaintiff alleges that on December 29, 2023, Defendant Washington, who was on duty prior to his scheduled religious service call out, failed to perform her duty to properly determine which incarcerated individuals were scheduled to attend religious programming for the afternoon. (Id. ¶¶ 6-15.) Specifically, Plaintiff alleges that, between approximately 11:00 a.m. and 12:45 p.m., "Officer Washington proceeded to perform the [facility's] mandatory 11 a.m. count," but never performed the "go-round"[3] list. ("Compl. ¶ 7). At approximately 1:15p.m., Plaintiff approached Defendant Washington to inquire about the "chapel run," to which Defendant

---

[2] In his original complaint, Plaintiff claimed he missed one religious service, but in his Opposition he seems to suggest that there were two additional instances he missed religious service. *See* Compl. at 5 ("In the above action there are three missed services here…."). Despite the Government's contention that these additional arguments should not be considered, the Court has held that a court "may consider new facts raised in opposition papers to the extent that they are consistent with the complaint, treating the new factual allegations as amending the original complaint," when a plaintiff proceeds *pro se*. *Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). Accordingly, for purposes of resolving this motion, the Court accepts as true the factual allegations in Plaintiff's Complaint and opposition papers, to the extent they are all consistent, and draws all reasonable inferences in Plaintiff's favor.

[3] "A "go-around" sheet is an internal tracking device used by the prison staff to locate prisoners within the facility." *See Glaspie v. Mahoney*, 973 F. Supp. 401 (S.D.N.Y. 1997). Here, the go-around list was used to write down the names of the incarcerated individuals attending religious service.

Washington responded, "they didn't call anything yet." (*Id.* ¶¶ 8-9.) At "approximately 2:15p.m. – 2:25p.m.," Defendant Washington received a phone call from the facility's Chaplain, who was calling for Plaintiff to be sent to the chapel. (*Id.* ¶ 11.) Shortly after, Defendant Washington asked aloud who was going to the chapel and proceeded to prepare the corresponding paperwork. (*Id.* ¶ 13.)

According to Plaintiff, Defendant Riley, the area supervisor, arrived on scene at approximately 2:40p.m., at which time Plaintiff immediately informed Defendant Riley that no chapel run had occurred, despite the call from the Chaplain. (*Id.* ¶ 14.) Defendant Riley then proceeded to make a call before informing Plaintiff that it was "too late" for the chapel run. (*Id.* ¶ 15.) As a result, Plaintiff claims that all incarcerated individuals in Housing Block 7 were denied access to their religious service while all incarcerated individuals in Housing Blocks A and B, and Building 5 were allowed access to their religious service. (*Id.* ¶ 15.) Plaintiff alleges that he thereafter filed a grievance, appealed to the Inmate Grievance Resolution Committee's Superintendent and to the Central Office Review Committee, and ultimately, after no response, filed the instance action. (*Id.* ¶ 17, p. 6.)

## LEGAL STANDARD

### II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When there are well-pleaded factual allegations in the complaint, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. While the Court must take all material factual

allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). The Second Circuit "deem[s] a complaint to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference ... and documents that plaintiffs either possessed or knew about and upon which they relied in bringing the suit." *Rotham v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (internal citations omitted). The critical inquiry is whether the Plaintiff has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. A motion to dismiss will be denied where the allegations "allow[ ] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Finally, "where, as here, [P]laintiff proceeds *pro se*, the court must "construe [] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s].'" *Corbett v. Annucci*, 2018 U.S. Dist. LEXIS 24291, 2018 WL 919832, at *5 (S.D.N.Y Feb. 12, 2018); *Askew v. Lindsey*, No. 15-CV-7496 (KMK), 2016 U.S. Dist. LEXIS 126543, 2016 WL 4992641, at *2 (S.D.N.Y. Sept. 16, 2016) (alterations in original) (citing *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013)). However, "the liberal treatment afforded to *pro se* litigants does not exempt a *pro se* party from compliance with relevant rules of procedural and substantive law.'" *Id.* (quoting *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013)).

## DISCUSSION

Plaintiff asserts that his rights under the First and Fourteenth Amendments as well as under the RLUIPA were violated when Defendants allegedly caused him to miss three religious services. The Court considers the sufficiency of each claim in turn.

4

I.  **Claims Against Defendant Martuscello**

Defendant Martuscello is the only Defendant in this action being sued in his official capacity. Plaintiff, however, fails to plead any factual allegations against Defendant Martuscello that could serve as the basis for liability under Section 1983.

As clarified by the Supreme Court in *Ashcroft v. Iqbal*, "vicarious liability is inapplicable to § 1983 suits." 556 U.S. 662, 676 (2009). Accordingly, "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*" and "a plaintiff must plead that each Government-official Defendant, through the official's own individual actions, has violated the Constitution." *Id.* (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)); *see also Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting same in *Iqbal*); *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (upholding a district court's dismissal of claims against a warden in a correctional center where plaintiff did not allege the warden's personal involvement in, or awareness of, the health, safety, and communications issued raised by plaintiff); *Wright v. Smith*, 21 F. 3d 496, 501 (2d Cir. 2003) (noting that a defendant in a § 1983 action "[cannot] be held personally responsible simply because he was in a high position of authority in the prison system"); *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985) ("[P]laintiff's claim for monetary damages against [the Commissioner] requires a showing of more than linkage in the prison chain of command."). Further, under *Monell*, "[i]n order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (citing *Monell*, 436 U.S. at 690-91).

Even affording Plaintiff's Complaint the liberal construction to which pro se pleadings are entitled and interpreting it to raise the strongest arguments it suggests, Plaintiff nevertheless fails to satisfy the fifth *Monell* prong because he does not allege the existence of any official policy or custom. To establish municipal liability under *Monell*, a plaintiff must plead facts showing one of the following:

> (1) the existence of a formal policy officially adopted by the municipality; (2) actions taken or decisions made by municipal officials with final policymaking authority that caused the alleged deprivation; (3) a practice so persistent and widespread that it constitutes a custom or usage with the force of law; or (4) a failure to properly train or supervise employees that amounts to deliberate indifference to individuals' constitutional rights.

*White v. Westchester County*, No. 18-CV-730 (KMK), 2018 WL 6726555, at *10 (S.D.N.Y. Dec. 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Here, Plaintiff does not allege the existence of any formal policy, nor does he claim that Defendant Martuscello—assuming he had policymaking authority—took any specific actions giving rise to the alleged constitutional deprivation. Thus, Plaintiff can proceed under *Monell* only if he plausibly alleges either (a) a widespread and consistent custom or practice of violating inmates' free exercise rights, or (b) a failure to train or supervise employees that reflects deliberate indifference. Plaintiff, however, offers only conclusory assertions that Defendant Martuscello failed to "curb the known patterns" of violations by Defendants Washington and Riley. (Compl. ¶ 24.) Such bare allegations, unsupported by factual detail, do not permit the Court to infer the existence of a municipal policy or custom. While Plaintiff notes that the plaintiff in *Kravitz* was allowed to proceed with just two missed religious services (Pl. Opp. at 4), in that case "[t]he admissible evidence show[ed] that [the plaintiff] was unable to observe his religious holiday due to the abusive conduct of corrections officers." *Kravitz v. Purcell*, 87 F.4th at 128. Plaintiff has not pled any improper conduct by any of the Defendants here nor has he pled any facts alleging that

Defendant Washington and Defendant Riley were inadequately trained or supervised. *See City of Canton v. Harris*, 489 U.S. 378, 392 (1989) (noting that where municipal liability is based on a failure to train employees, such failure to train must "reflect[] deliberate indifference to…constitutional rights").

Further, Plaintiff does not identify a single action of Defendant Martuscello's that violated Plaintiff's free exercise rights. Plaintiff appears to name Defendant Martuscello as a defendant because, in his capacity as Commissioner, Defendant Martuscello oversaw the facilities operated by DOCCS, including the facility where Plaintiff was held at the time of the allegations. Plaintiff's allegation that Defendant Martuscello "failed to take action to curb known patterns of denying incarcerated individuals' free exercise of religion by [Defendants Washington and Riley]" implies liability under a theory of *respondeat superior*. (Compl. ¶ 24.) However, Plaintiff fails to plead allegations that Defendant Martuscello was personally involved in any violation of Plaintiff's constitutional rights. Plaintiff merely claims that Defendant Martuscello "after being informed of the violations through a report or appeal, failed to remedy the wrong" (Pl. Opp. at 4), but this allegation, without more, simply amounts to a quotation from the now overruled *Colon v. Coughlin*. 58 F. 865, 873 (1995). Plaintiff does not specify what "report or appeal" was sent to Defendant Martuscello and what the contents of those were. Accordingly, such allegation does not establish that Defendant Martuscello was personally involved in any alleged constitutional violation, and as explained above, government officials cannot be held liable for the unconstitutional acts of their subordinates without any acts of their own. *See Iqbal*, 556 U.S. at 676; *Smith v. Graziano*, No. 9:08-CV-469 GLS/RFT, 2010 WL 1330019, at *8 (N.D.N.Y. Mar. 16, 2010) ("It is well settled that the personal involvement of a defendant is a prerequisite for the

assessment of damages in a § 1983 action, ...and furthermore, the doctrine of *respondeat superior* is inapplicable to § 1983 claims.") (internal citations omitted).

Plaintiff seeks a declaratory judgment against Defendant Martuscello, seeking a declaration that Defendant Martuscello "failed to take action to curb known patterns" of constitutional and RLUIPA violations. (Compl. at 8.) Such declaratory relief under *Ex Parte Young* is barred by the Eleventh Amendment when it is retrospective. *Green v. Mansour*, 474 U.S. 64,74 (1985) (holding that declaratory relief against state officials for past violations of federal law where there are no claims of continuing violations is inappropriate). Per his Opposition, Plaintiff also seeks prospective declaratory relief (Pl. Opp. At 2), but such relief is also inappropriate because Plaintiff has alleged nothing to suggest that the alleged violations are likely to continue, meaning that there is no "imminent" injury warranting such relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 100 (1983) (collecting cases).

Accordingly, because Plaintiff fails to allege a *Monell* claim or any personal involvement by Defendant Martuscello, all claims against Defendant Martuscello are dismissed without prejudice.

## II.    Plaintiff's Theories of Liabilities

Plaintiff alleges that the Jumah services he has missed give rise to a Free Exercise claim under the First Amendment, an Equal Protection claim under the Fourteenth Amendment, and a RLUIPA claim. The Court will address each theory of liability in turn.

### 1.    Plaintiff's Free Exercise Claim

While incarcerated individuals "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause," *Ford v. McGinnis*, 352 F. 3d 582, 588 (2d Cir. 2003), in *Wiggins v. Griffin*, this Circuit joined its sister circuits in "conclud[ing] that

8

negligent conduct is not enough" to sustain a Section 1983 free exercise claim. 86 F.4th 987, 997 (2d Cir. 2023) (collecting cases). While this Circuit also recently determined that "[a] prisoner claiming a violation of the First Amendment right to the free exercise of religion under § 1983 need not make a showing of a substantial burden on his religious beliefs," *Kravitz v. Purcell*, 87 F.4th 111 (2d Cir. 2023), "isolated acts of negligence," such as those alleged here, do not violate the right to free exercise of religion. *Wiggins*, 86 F.4th at 997.

Even liberally construing pro se Plaintiff's submissions to interpret them to make "the strongest arguments that they suggest," Plaintiff's allegations here do not amount to more than negligence, at worst, or an administrative oversight. *Id.* (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006). As explained above, when Plaintiff alerted Defendant Washington, at approximately 1:15 p.m. on December 29, 2023, that he was supposed to be sent to his religious service, Defendant Washington communicated to Plaintiff that she had not received a call confirming this and, as a result, Plaintiff was not sent out to his religious service. (Compl. ¶¶ 8-9.) It wasn't until sometime between 2:15 p.m. and 2:25 p.m., an hour after Plaintiff was supposed to leave, that the Chaplain called his housing block asking that he be produced for his religious service. *Id.* ¶ 11. Shortly after this call, at approximately 2:30 p.m., Defendant Washington asked aloud to the incarcerated individuals in Plaintiff's housing block who was due to go to the chapel and proceeded to jot down those cell locations. *Id.* ¶ 13. Soon after, at approximately 2:40 p.m., Defendant's supervisor, Defendant Riley, arrived at Plaintiff's housing block and called the chapel, during which time he informed Plaintiff that it was too late to be sent to the chapel and that none of the incarcerated individuals in Plaintiff's housing block would be allowed to attend their religious services that afternoon. (*Id.* ¶¶ 14-15).

9

The Court concurs with Defendants that at no point in the Complaint or in his Opposition does Plaintiff allege that Defendants intentionally denied Plaintiff his right to attend his religious service or demonstrated deliberate indifference to Plaintiff's rights. (Def. Mot. at 7.) *See Wiggins*, 86 F.4th at 997 ("Although mere negligence cannot support a First Amendment free exercise claim, we have previously held that deliberate indifference clearly suffices.") (internal citations omitted). "Deliberate indifference arises when an actor is culpably reckless, or when an official's act or . . . failure to act reveals a conscious disregard of a substantial risk of serious harm." *Id.* at 998 (internal quotations omitted). Based on the allegations, Defendant Washington did not receive the call from the Chaplain requesting Plaintiff's presence at the chapel until an hour after Plaintiff claims he was supposed to go. Rather than intentionally depriving Plaintiff of his religious rights, Defendant Washington actually attempted to get Plaintiff to his religious service – shortly after the phone call from the Chaplain, Defendant Washington began to prepare the corresponding paperwork for the incarcerated individuals in Plaintiff's housing block who had expressed they were due at the chapel. (Compl. ¶¶ 11-13.) While she ultimately did not direct Plaintiff and the others in his housing block to depart for their religious service, this was a result of her supervisor, Defendant Riley, arriving and determining that it was too late to do so following a call to the chapel. None of the above allegations, as outlined by Plaintiff in his Complaint, amount to anything more than an isolated act of negligence or an administrative oversight on part of Defendants and the chapel. While "[r]epeated acts of apparent negligence may indicate deliberate indifference," even assuming as true that there were two additional instances in which Plaintiff missed his religious service, as Plaintiff suggested in his Opposition, Plaintiff provides no details surrounding those other instances, including whether Defendants were personally involved, as required by *Iqbal*, and what actions, if any, they took to deprive him of his right to free exercise of religion.

*Id.* Accordingly, because "isolated acts of negligence" do not violate the free exercise rights, Plaintiff's free exercise claim is dismissed without prejudice.

### 2. Plaintiff's Equal Protection Claim

The Court now considers whether Plaintiff has stated a claim under the Equal Protection Clause of the Fourteenth Amendment, which declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Brown v. City of Oneonta*, 221 F.3d 329, 337 (2d Cir. 2000) (internal quotations omitted) (quoting *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). "To prove a violation of the Equal Protection Clause, ... a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination," *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005), "directed at an identifiable or suspect class," *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995). "Discriminatory intent implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker…selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Brown v. Annucci*, 23 CIV 6056 (CS), 2025 WL 415814 (S.D.N.Y. Feb. 6, 2025) (internal citations omitted). "[A plaintiff] also must show that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not reasonably related to any legitimate penological interests." *Phillips*, 408 F.3d at 129; *see Williamson v. Maciol*, 839 F. App'x 633, 636 n.2 (2d Cir. 2021) (summary order) ("[T]he Supreme Court has created a lower level of scrutiny in determining the constitutionality of prison rules, generally requiring only that prison action be reasonably related to a legitimate penological interest.").

Here, Plaintiff fails to plead adequate facts to make any such showing. Plaintiff has not alleged facts to support a claim of intentional discrimination against the Defendants nor does Plaintiff allege the existence of a policy at Sing Sing Correctional Facility that expressly classifies inmates based on their religious beliefs. Plaintiff offers the conclusory statements that "the conduct and actions of defendants was purposeful discrimination…[with the] intent to discriminate" and that "defendants intentionally did not assign an escort officer to escort incarcerated individuals to services because of impermissible consideration and purposeful consideration." (Pl. Opp. at 7.) Without more, Plaintiff's conclusory statements do not support a claim of intentional discrimination under the Equal Protection Clause.

Further, Plaintiff's claims that he was discriminated against because the incarcerated individuals in Housing Blocks A and B, and Building 5 were permitted to attend their religious services and his housing block was not also do not support an Equal Protection claim. *See* Compl. ¶ 15. As the Court noted in *Brown v. Annucci*, "prison housing blocks are not a suspect class;" thus, Plaintiff cannot maintain an equal protection claim based on differential treatment with prisoners in other housing blocks. 2025 WL 415814, at *7. Regardless, Plaintiff never specifies the religious background of the incarcerated individuals in the housing blocks that were allowed to attend their religious services, and instead, appears to insinuate that at least some of them were Muslims who attended the Jumah service Plaintiff missed on December 29, 2023. *See* Compl. ¶ 21. ("…Housing Blocks A, B, and Building 5, those incarcerated individuals were afforded their constitutional rights of attending the above noted religious services, held [] December 29, 2023."). Therefore, Plaintiff could not have been discriminated against on the basis of his religion because other practicing Muslims were able to attend their religious services that day.

Accordingly, Plaintiff's Equal Protection claim is dismissed without prejudice.

12

### 3. Plaintiff's RUILPA Claim

The Court now turns to Plaintiff's RUILPA claim. RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation of exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). RLUIPA provides in part that:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
> (1) is in furtherance of a compelling governmental interest; and
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2).

Accordingly, the Court needs to consider whether the government imposed "a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," and would also need to assess whether "the government demonstrate[s] that the imposition of the burden on that person" is both "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." *Amaker v. Lee*, No. 13-CV-5292(NSR), 2019 WL 1978612, at *16 (S.D.N.Y. May 3, 2019) (citing 42 U.S.C. § 2000cc-1(a)). RLUIPA places a much higher burden on defendants than does the First Amendment. *Graziano*, No. 9:08-CV-469 at 33-34. Here, even under a liberal interpretation of the Complaint, Plaintiff has failed to establish that missing one, even three, religious services constituted a substantial burden on his ability to exercise his religious beliefs; *see Powell*, 14 CIV 9937, 2016 WL 4159897 at *21 (holding that missing two Jumah services is not a violation of RLUIPA). Further, as explained above with regards to Plaintiff's free exercise claim, Defendants' conduct was negligent at worse, which is insufficient to sustain a RLUIPA claim. *See, e.g., Guillory v. Ellis,* 2014 WL 4365274, at *9 n.10 (N.D.N.Y.

13

Aug. 29, 2014) ("negligent action" is "not actionable under section 1983 or under RLUIPA"); *Scott v. Shansiddeen*, No. 9:12-CV-84 GLS/TWD, 2013 WL 3187071, at *4 (N.D.N.Y. June 20, 2013) (negligent actions are not "sufficient to support a claim under the Religious Land Use and Institutionalized Person Act"); *Odom v. Dixion*, No. 04-CV-889F, 2008 WL 466255, at *11 (W.D.N.Y. Feb. 15, 2008) (negligent conduct was insufficient to support liability "under either the First Amendment or RLUIPA").

Additionally, Plaintiff is not entitled to either damages or injunctive relief under the statute. RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities, which is the relief Plaintiff is seeking.[4] *See Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (per curiam)[5] (citing *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011)); *Tripathy v. McKoy*, 103 F.4th 106, 115 (2d Cir. 2024) ("...we remain bound by *Gonyea*'s holding that RLUIPA does not permit individual-capacity damages against state officers."). Thus, Plaintiff's claim for damages pursuant to RLUIPA against Defendants is dismissed without prejudice.

### Leave to Amend

Under Fed. R. Civ. P. 15(a)(2), courts are to "freely give leave [to amend a pleading] when justice so requires. The Second Circuit has counseled courts not to dismiss a complaint with prejudice prior to issuing a ruling that highlights the "precise defects" of those claims. *Williams v. Citigroup Inc.*, 659 F.3d 208, 214 (2d Cir. 2011) (per curiam). If a complaint's deficiencies are "substantive" as opposed to "futile", a request to replead "should be denied." *Cuoco v. Moritsugu*,

---

[4] Plaintiff seeks $100,000, jointly and severally against Defendants Washington and Riley. (Compl. at 8.)
[5] *See Washington v. Gonyea*, 731 F.3d 143, 145-46 (2d Cir. 2013) (" RLUIPA does not provide a cause of action against state officials in their individual capacities because the legislation was enacted pursuant to Congress' spending power, *see* 42 U.S.C. § 2000cc-1(b)(1), which allows the imposition of conditions, such as individual liability, only on those parties actually receiving the state funds.").

222 F.3d 99, 112 (2d Cir. 2000). The Court is not convinced that an opportunity to replead would be futile. Accordingly, the Court grants Plaintiff leave to amend the complaint.

## Conclusion

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's Complaint is GRANTED and all claims against Defendants are dismissed without prejudice.

Plaintiff is granted leave to file an Amended Complaint on or before December 1, 2025. Should Plaintiff not file an Amended Complaint by this date, Plaintiff's claims will be dismissed with prejudice. In the event Plaintiff files an Amended Complaint by December 1, 2025, Defendants are directed to answer, or otherwise respond to, the Amended Complaint within twenty-one (21) days following Plaintiff's filing of the Amended Complaint. The Clerk of Court is directed to mail pro se Plaintiff a copy of this endorsement and to show service on the docket. The Clerk of Court is further directed to terminate the motion at ECF No. 29.

SO ORDERED.

Dated: October 30, 2025  
White Plains, New York

Hon. Nelson S. Roman  
U.S. District Court Judge, S.D.N.Y.